Case number 10-1138. First, Chicago Insurance v. Molda. All right. Counsel for the appellant, if you could step forward, identify yourself, and you can begin your argument. Good morning, Your Honors. William Lazarus on behalf of Appellant Noah Wilson. I'd like to, in the event that you don't pepper me with insightful questions, I'd like to reserve five minutes rebuttal. Well, that's impossible. I figured as much. Noah Wilson was driving on Roosevelt Road on August 17, 2005. I mean, do you know what the facts of the case are? We've read the books. I think the nub of this is that when Steve Harrison called Mark Baskowitz, an associated broker agent, and Baskowitz heard this call, knew his client, Metrolift, wasn't terribly interested in pushing a formal claim. Let me ask you a question about that conversation and other conversations between that producer and your client. There's a question of fact. There's two different people saying two different things here, don't they? Baskowitz can't really remember much at all. It's basically Harrison and Harrison saying, Oh, gee, I just wanted to develop a game plan and wait to see what develops. There's a question of fact between what one says and a question of fact of what the other remembers. Well, there are questions of fact. That's all we need. Let me ask you this. What is the real nub of this case? Are you saying that First Chicago is a stop? We are. And the reason is... And it's based on the conduct of who? Based on the conduct of the agent. Associated. Associated, yes. Associated did something with who to lead... Associated did something to Metrolift? With Metrolift. It's that call. Associated did something with Metrolift to give Metrolift the impression that notice to Associated was notice to First Chicago. Yes, no question. That was their course of conduct. That's what I thought. And do you have a case where... And let me make sure I got this right. The principle is First Chicago. The sort of agent is Associated. True? Yes. All right. In this case. I mean, we're talking about apparent authority and all that, right? Right. And authority is actual in this case, I think. Well, if it were actual, I think there'd be no dispute. If it's actual, because then we're talking about an established master-servant relationship, agent principle. But do you have a case where the conduct of the agent that is Associated binds the principle to this third party? How can Associated establish apparent authority to someone else that it can stand in the shoes of First Chicago? I thought, and maybe I'm wrong, that it is the principle that conveys to an agent, to this other person. For example, in Burgos, the insurance broker, the appearance of acting as the principle's agent to other people, and therefore what the principle did gave the insurance the reasonable understanding that notice to the broker was notice to its insurer. I don't know of a single case that says an agent can create apparent authority on behalf of its principle. Here, I would say. Here or anywhere. What's your strongest case? Both the agent, first of all, underlying premise. Here, both First Chicago and its agent created the appearance, which is why I think it's more than appearance, but the appearance. Who would First Chicago have created that appearance with? With all its insurance, because the contract put the name of Associated on the document. Right, of course, and the phone number, and it was the only phone number, and it was the only other party. Are you saying, and they accepted claims from them in the past? Are you saying that First Chicago put their name, Associated's name on its contract? As opposed to Associated putting its sticker on the Associated First Chicago policy? First Chicago was there. It was the front. It was printed up at the top, and it had their phone number. Who's the insured in this case? Metrolift. All right. And Molda. And Molda, excuse me. And Molda is involved. And let me ask you another question. When First Chicago issues the policy, they send it to the producer, don't they? Yes, I believe so. I think that's what they did in your case. Yes, I think First Chicago, it's undisputed that First Chicago acquiesced in the system where it would get notice of claims from Associated after Metrolift contacted Associated. There was some factual question as to whether there was at least payment for the policy went directly. Let me sort out a few more things. Sure. Metrolift is the employer of Molda, right? Yes. Metrolift is the true insured. Molda is simply someone who would fall under the Metrolift. The true insurer, excuse me? The insured, the name insured. Or insured, excuse me. Yes, it is not the true insured. Well, they're not. They're not. They're another insured. He's a secondary insured. He's a secondary insured.  Either name insured or other insured. Another insured. Okay. Yes. So Metrolift is no longer in this case, right? Yes. And they got dismissed. Right. Because so to the extent that Molda is the agent or the employee of Metrolift, why is the suit against Molda still around if Metrolift is no longer in this case? I thought Metrolift had agreed to be bound by the decision of the trial court. Right. Absolutely. Even though they were dismissed. Right. They've agreed to be bound by whatever decision the court enters because they are the. Well, what did the court enter? Didn't they enter a dismissal? Yes. That there was no duty. Summary judgment. All right. No duty to defend or indemnify. Right? Was it both? Right. No duty to defend or indemnify. And you're not asking for summary judgment on estoppel. You're asking for a trial on the issues. Is that true? We're asking for reversal of the summary judgment. Oh, but not for us to grant you summary judgment in that there's an absolute estoppel. I don't think we could make that motion. I'd be happy to, but. Well, no, there are cases that allow for finding of estoppel. But I don't believe this is one such of those cases. But estoppel has been granted as a matter of law in summary judgment cases, depending on how long it lasts. So the material question of fact at issue in this case is to reverse the summary judgment that was granted? There are. On what basis do we reverse? Give me that. When associated received the phone call, that was notice to the apparent agent. Was associated to the apparent agent. It's hard for me to say there's a question of fact because First Chicago State admitted this, that associated was at least apparent agent. I think it's closer to agency, and it's hardly a question. But isn't there a position that they are not bound by? The acts of associated when it decided not to tender notice? Isn't that one of the arguments? That's the primary defense. And that's where I started with the null of this case and going to that. You're saying that should at least be a factual question. Sure. So to that extent, there would be, First Chicago would be both denying, or both admitting that associated is its agent and denying it that it's its agent, because everybody knows that if it's your agent, then of course notice to the agent is notice to the principal. But you're saying that First Chicago. They admit that associated was their apparent agent, that there was a course in conduct where they accepted. But they don't have to be bound by conduct that is improper and not allowed under the terms. That's where they say that's the exception. Sure. And that, I suppose, is the big factual issue of the case. What was our position is simply associated realized there was a mutuality of interest here. And there was no adverse interest between associated and First Chicago. And for that reason, associated's actions as First Chicago's agent or apparent agent, whichever you will, bound First Chicago. First Chicago has come back and said, no, we're not bound, because there was this agreement between the insured and the agent. And they were really carrying our interest because we needed to know about this crash, blah, blah, blah. It doesn't apply, because there was no adverse interest. In the cases they cited, if you look at the facts of the cases, you need an adverse interest between the agent and the insurance company for the estoppel principle to not apply. So let me make sure I got this right. Associated, in that exchange that you just described, sought to satisfy two masters, basically. Right. Satisfy First Chicago. Right. And satisfy METROLIT. Win-win. Right. And lose-lose. METROLIT didn't want to go forward with the claim because it might affect their premiums. And so they told Associated, don't do anything. Right. And First Chicago is now trying to use that as a bar. Right. And the judge bought it, and he perceptively said, gee, METROLIT had a reason not to want the claim reported for the very reason you cited. Premiums go up. He didn't seem to see that First Chicago would have a reason not to get official notice, too, not to get a written claim notice. Because it would start to take action. It would have to start inquiring about the crash. Why wouldn't the true action be against Associated for basically trying to serve two masters at the same time and in trying to do that, had to breach its duty to one and not the other? I mean, here they are trying to satisfy METROLIT. What does that have to do with our field here? Right. I don't know how I should have been at this stage. Obviously, the trial judge said First Chicago is out of this case. Right. And he had to have a reason. And we can affirm on any basis. And the question is, you're saying that it's Agent Associated, and that's you? No, no, we are Noah Wilson, the injured. All right. The trial judge said First Chicago shouldn't be bound by this, shouldn't be exposed to liability based on what happened here. Yes. And to the extent that Associated complied with METROLIT's request not to do something, not to send notice to First Chicago, I mean, why isn't that sufficient? The agent was acting in the interest of First Chicago as well as METROLIT. That's the nub of it, really. And certainly it's a factual question at least, but the reasonable inference, and this is a summary judgment issue. Are you saying that when Associated agreed to METROLIT's request? Or acted that way. Well, that it was really deeply behind the scenes really acting on First Chicago's interests? It was. It was. And it wasn't very far behind the scenes. Was it acting in METROLIT's interests as well? Yes. Yes. That's why there's a mutuality interest, win-win as far as its clients are concerned, lose-lose as far as the people kept in the dark on the situation, Michael Molda and Noah Wilson. So in terms of win-win, everybody wins. METROLIT was a win-win situation. Sure. But First Chicago is not. Look where we are. It's win for First Chicago. They're out from under. We'll give you a few minutes for rebuttal. All right. Thank you. Good morning. For the record, Brianne Connell, B-R-I-A-N-N-E, Connell, C-O-N-N-E-L-L for First Chicago. Can I ask you a couple questions just for the beginning? Sure. The First Chicago policy included associates' name, address, and telephone number on its declaration page. As a producer, did it not? It did. And isn't it in the insurance industry, almost all insurance companies, when there's a new purchase of a policy, you send it to the producer? Typically, yes, and then the producer would send it out to the insured for review. So let's make it clear. Let's go all the way then. Are you admitting that Associated was the agent for First Chicago? Not at all. I think there's nothing in the record that shows that Associated was actually. So why the two items that were just brought out by Justice Gordon, why doesn't that establish as a matter of law an apparent agency between the two, or at the very least raise a material question of fact that would preclude summary judgment? My answer to that is twofold. First, both of the individuals from Associated, Mr. Baskowitz, I'm probably butchering his name, and Mr. Ken South, testified that they do not solely sell First Chicago products. They sell approximately 10 to 11 different lines of insurance. But you would acknowledge that Associated could be the apparent agency of a number of insurance companies, including First Chicago? It's a possibility, Your Honor. So why isn't it a question of fact? Yeah, why isn't it an apparent agent of First Chicago and a question of fact? Because as the trial court found, even if you take that. We're not looking at what he found. This is de novo review. Sure. Even if you take them as being the apparent agent, it doesn't matter where there was a conspiracy to keep actual notice from First Chicago. And Your Honor had brought up earlier this. Well, what principle are you drawing upon to give us the right to say that there was collusion between Associated and the Bachelorette so that First Chicago was excused? I think the Tesla case is right on point. Regardless of what happened, the details, the specifics of the telephone conversation between Mr. Harrison and Mr. Baskowitz, the end result is the same. And that's why summary judgment was appropriate because the question of fact has to be material. And at the end of the day, the end result of that telephone conversation was that First Chicago would not receive notice. Whether you believe Mr. Harrison's testimony that he wanted to wait and see and develop a game plan because he wanted to see if Mr. Molda's personal policy would cover. What relieves the principle of its obligation under this apparent agency scenario? What's the principle of law that relieves the insured from covering the, not the named insured, but Molda and Wilson? What's the principle? Well, under the Tesla case, notice to a would-be agent in a situation where the alleged agent... Notice to a would-be agent? The principle is your client, not the agent. Correct. You can read it again, but we're not talking about notice to an agent. Go ahead. Actually, maybe I didn't hear the whole thing. Well, I was just saying where the alleged agent and the insured conspire  because notice would have never actually gotten to the principal. And perhaps I'm misunderstanding your question, Your Honor. So you're saying there was no question of fact that they never received notice? Exactly. And actually, if you look at the report of proceeding towards the end when the... What case did you just quote from? The Tesla case. And what kind of posture was the Tesla case? Was it summary judgment? I believe so. Don't hold me to that. Was it a duty to defend the case? I believe so, yes. Now, what case absolves Burr Chicago from providing coverage to Molda when he has no obligation to notify? Because in this instance, he doesn't have to give notice. He's covered as another insured under the policy. And he was completely unaware. Nobody ever told him at Associated that he had coverage under this policy. If I'm understanding your question, Your Honor, Mr. Molda, if he seeks to have coverage under this policy, he has to abide by the same terms of the policy. You can't violate a contract and seek to enforce the terms. I'm talking about where there's no notice. Are you saying Molda had to give notice to Burr Chicago? Molda gave notice to Mr. Harrison, and Mr. Harrison gave notice. So how do you get out from under that Molda was never ever told that he had coverage? He is an insured, is he not? There's no debate he was an insured under the policy. Yes. So how does Burr Chicago, the insured, how can they be absolved from covering him when he doesn't have an obligation to give notice? And, in fact, he gave his notice appropriately to his superior. He does have an obligation to give notice under the policy. He did give notice. He gave notice. He did. All right. So how does Associated, I'm sorry, I'm Associated, Burr Chicago, how does Burr Chicago get out from covering this insured who did give his notice? Well, he gave his notice to Mr. Harrison, who then conspired with Mr. Baskowitz to not give notice. There's no question that Mr. Molda is not a conspirator. He's another insured. He had coverage, he gave his notice, and how does the insurer get out from under covering him? I'm not concerned about MetroLift. I'm concerned about the insured who gave his notice. Because the end result is the same. He didn't give his notice. Burr Chicago never got notice, and I don't think that that's disputed here. But he did give notice. Not to Burr Chicago. No, he gave it to the agent. The apparent agent. There's testimony all over the record that Associated's name appears on the policy. Burr Chicago really doesn't dispute that there's at least an apparent agency question of fact. Mr. Molda gave notice to his employer. Correct. So how did he breach the policy? Why isn't he covered? He didn't give notice to Burr Chicago, and at the end the result is the same. I'm not talking about Burr Chicago, though. He gave notice to MetroLift, and MetroLift gave notice to the agent. Let me see if I can at least add something to it. If Mr. Molda had given notice to Associated and not have engaged in the conspiracy to deny notice to Burr Chicago, we'd be in a different situation where Burr Chicago could not deny notice. We would be in a different situation, and I think Burr Chicago's position at that point would be solely that Associated is not their agent. Right. That would be their backup position. But assuming we already have the point where there is an apparent authority, or at least there's a material question of fact whether or not apparent authority arose based on their relationship. I would say that there's a question of fact but that it's not material because it's negated by the fact that even if there was apparent authority, there was a conspiracy. You have to admit that it would be material if Molda had given the notice to Associated. If there was no conspiracy, if he had not engaged in it. Right. Agreed. And so to that extent, it would preclude summary judgment. Agreed. And I think that was Justice McBride's point that he gave notice, the only notice he could possibly give because he was unaware that he was covered by the Burr Chicago policy, and therefore he couldn't give notice to either Burr Chicago or Associated. He only gave notice to Harris. But at the same time, I understand your position that it doesn't matter what he knew. He's got to comply with the contract, and the contract says that he's got to give notice to Burr Chicago, and he didn't. Right. That's correct, Judge. Let me ask you a question. In almost all late notice cases that I've read, the insurance carrier has to show prejudice. And we haven't talked about prejudice here, nor have I seen any prejudice here. What is the prejudice? Well, again, my answer to that is twofold. First of all, according to the Livorsi case where it's unreasonably and inexcusably late notice, you don't have to show prejudice. But even if we were to have to show prejudice, 31 months as a matter of law is prejudicial. And I did cite those cases that said, you know, four months, seven and a half months, six months is prejudicial. And here we have an instance of 31 months of late notice. But you keep ignoring the fact that the notice was given by Molda immediately. He immediately notified. And they argue in their brief that there's no requirement for another insured under this policy to give notice. What is your response to that? If an insured, whether it's the named insured or an insured seeking coverage under the policy, that insured person, entity, whatever, needs to alert for Chicago. And that's what he did. He notified Mr. Harrison. And that there's a question of fact whether that notice was reasonable under the circumstances. I respectfully disagree because at the end of the day. It is the party who has no idea that he's even covered under the policy should be thrown out the door. We're not talking about Metrolinx. We're talking about Molda. Let's make it clear. Molda is not going to be hurt in any regard. I mean, he was only covered by his, he was covered by insurance. He was covered by his personal auto insurance policy. Maybe it was a little low for purposes of the damages that resulted to Wilson. But, I mean, he was covered. He was covered to $20,000. That was what his mother's insurance policy was. I think it was a 2040. Let me go back to where I'm coming from. I'm coming from a different place than they're coming from. All the cases that I've read about prejudice means that you have to show that you would have done something differently in regard to the underlining case. What would First Chicago have done differently here? Well, it would have been permitted to do any sort of investigation regarding the accident and whether or not there would be a coverage position to take 31 months after the fact. You know, witnesses disappear. Memories fade. Well, I understand that. Give us one different thing that they would have done. Well, their investigation would have been sincerely changed. What do you think would have resulted from the investigation that wasn't already known? That Mr. Mulder was at fault? No. That Wilson didn't suffer the damages that she claims? Oh, I'm sure she did. Well, what possible outcome could come from that investigation that isn't already known? So where's the prejudice? Again, it's my position that we don't have to show prejudice, but second, we'll never know. Because 31 months after the fact, I mean, I'm sorry, that's an attorney answer. It's not what you're looking for, but we'll never know. Because 31 months after the fact, you won't know what you could have found out. But if cases require that there be actual prejudice or at least some semblance of prejudice, I think we require more than you just don't know. Some cases require to show prejudice, except for the cases that I've cited that have shown that four months is prejudicial. Just presumptively so. Seven and a half months, six months. Here we have 31 months. But in all those cases that you cite that say that, there was no insurance company who actually did an investigation here. Here there was an insurance company, an underlining coverage here, that did an investigation, that had information, that took information, and all that information would be information that PERS Chicago could be able to obtain. That's where the difference is between your cases and where the prejudice line falls. If I'm understanding, Your Honor, that you're saying the investigation that we could have done, Well, I'm saying that that investigation was done by another carrier, wasn't there? Because Mr. Molda had his own insurance. And his carrier did an investigation. And his carrier had an investigation of everything that happened. So you would be able to have all that information. So there wouldn't be, you know, in the line of cases that you're talking about where the courts have held that all this time passed, that's because no one investigated in any of those cases anything. Here you had an insurance company, an underlining insurance company, that already did an investigation. I understand what you're saying. I think my response to that is that that insurance company was investigating that accident, that incident, those witnesses, to protect its own interests at that time. And PERS Chicago was not afforded that opportunity to protect its interests. All right. Does Your Honor have any more questions? You can finish up. Just as a conclusion, I know counsel had mentioned briefly that there was some allegation that there was conniving between PERS Chicago and MetroLift when MetroLift was dismissed and agreed to be bound by the judgment. And to me that just strains credulity because it seems odd that MetroLift would conspire with PERS Chicago to deny its own ability to obtain coverage. But explain to me why PERS Chicago would agree to be bound by the judgment that it I'm sorry, MetroLift? No, PERS Chicago, no. Isn't that something that's normally done in the industry? That a party would agree to be essentially dismissed? It was always done in the industry. The dismissal was founded upon MetroLift's agreement to be bound by stipulated to be bound. All good insurance lawyers do that, don't they? That was the only way they were going to get dismissed. They were agreeing to be bound. Agreed. Totally. And that's typically done to save costs and expenses. And the reason it's done is because it saves the insurance company money. Costs and expenses. Exactly. Costs and expenses, and they do it almost every time. All right. Thank you, Your Honors. Thank you. A couple quick points, Your Honors. MetroLift, excuse me, PERS Chicago stated during the summary judgment hearing that Associated was its agent for the purpose of taking notice of claims. For that purpose, the agency was established. They rely on Tesler as their case to support the judge's decision. What's your case that you're relying on? Tesler. Their cases are great cases for us if they explain this principle. Tesler, the agent, had really wanted to write the policy. Are you sure? Are you acquainted with Tesler better than she was in terms of what posture it came in? It was in trial, after trial. After a trial. Right. So presumably it would have at least acknowledged that there was a material question of fact at issue to preclude summary judgment. That's true. And I love the Woodlawn Farm case where Judge T. Williams, the agent, also happened to be the guy who was getting insured and he'd keep changing his hats. All right. A clear situation where you had an interest of the agent adverse to that of the principal. Just nothing that indicates that. We don't have to – our decision doesn't have to turn on disparate interests. No. It simply has to turn on whether a material question of fact exists regarding this conspiracy or this deprivation of notice for Chicago by its very apparent agent. Right. And if we say maybe so, maybe not, it's not a question of law to be resolved by a judge. It's a question of fact to be resolved by a jury. Certainly. I think that it would be – maybe it would speed things along with the case if there was a little explanation to the trial court of the established principal. Well, we know how insurance – there are rules that Justice Gordon referred to as how defense insurance lawyers work. We understand how PI lawyers work as well. All right. All right. Thank you very much. Thank you. The case will be taken under advisement.